COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 

 


 
 
  
 JOHN F. COOK,
  
                            
 Appellant,
  
 v.
  
 TOM BROWN MINISTRIES, WORD OF LIFE CHURCH
 OF EL PASO, TOM BROWN, EL PASOANS FOR TRADITIONAL FAMILY VALUES, SALVADOR
 GOMEZ, BEN MENDOZA, ELIZABETH BRANHAM, AND RICHARDA MOMSEN, SOLELY IN HER
 OFFICIAL CAPACITY AS EL PASO CITY CLERK,
  
                            
 Appellees.
 
 
  
   '
     
   '
     
   '
     
   '
     
   '
     
  '
 
  
 
 
  
  
                   No. 08-11-00367-CV
  
 Appeal from the
  
 County
 Court at Law Number Three
  
 of El
 Paso County, Texas 
  
 (TC# 2011-DCV-02792)
 
  
 
 


 

                                                                  O
P I N I O N

This is an accelerated interlocutory appeal
of the trial court’s order denying injunctive relief sought by Appellant, John
F. Cook, who is the duly-elected Mayor of the City of El Paso.[1]  In his individual capacity, Cook filed suit
for injunctive and other relief against Appellees Tom Brown Ministries (TBM),
Word of Life Church (WOL Church), Tom Brown (Brown), El Pasoans for Traditional
Family Values (EPTFV), Salvador Gomez (Gomez), Ben Mendoza (Mendoza), Elizabeth
Branham, (Branham), (collectively, “Appellees”) and Richarda Momsen in her
official capacity as El Paso City Clerk (the City Clerk).  Cook sought to enjoin the use of recall petitions
to call an election to recall Cook as Mayor of El Paso, and City
Representatives Susie Byrd and Steve Ortega from their respective offices
because the petitions were knowingly and improperly financed, gathered, circulated,
and submitted in violation of the Texas Election Code (Election Code).  See Tex. Elec. Code Ann. § 253.094(b) (as
amended June 17, 2011) (West Supp. 2011), §§ 253.003, 253.005, 253.031,
253.095, 253.131, 273.081 (West 2010).  In
four issues, Cook now appeals the trial court’s denial of his request for
injunctive relief.

                                                               BACKGROUND

            Brown is the
President, Chairman of the Board of Directors, and Pastor of a non-profit
corporation, WOL Church.[2]  Brown also served as the chairman of EPTFV, a
specific-purpose political committee under the Election Code.  As a specific-purpose committee, EPTFV was
created for the specific purpose of supporting a measure described as
“traditional family values” to be decided by election on November 2, 2010.  Brown and EPTFV organized and led an effort to
secure passage of Ordinance Number 017456, the “Traditional Family Values Ordinance,”
which provided in part, “[T]he City of El Paso endorses traditional family
values by making health benefits available only to city employees and their
legal spouse and dependent children.”  Ordinance
Number 017456 was approved at the November 2, 2010, election.

            On January
13, 2011, EPTFV filed a campaign finance report, including purpose and totals
covering the period of October 22, 2010 through December 31, 2010.  As had previously been described in such
reports filed on September 29, 2010, and October 25, 2010, EPTFV’s stated purpose
in its filing was to support a measure described as “traditional family values”
with an election date of November 2, 2010.

            Thereafter,
on June 14, 2011, the El Paso City Council amended Ordinance Number 017456,
effectively restoring benefits to those persons who would have lost their
benefits if the ordinance had not been amended. 
Cook, as Mayor, cast the tie-breaking vote.

            Brown thereafter
informed City Council that WOL Church, a corporation, could lawfully circulate
recall petitions and would do so.  WOL
Church’s social networking page on Facebook identifies its website as “www.tbm.org,”
which is also the website for TBM.[3]
 In a June 2011 statement on www.tbm.com,
Brown stated that he and EPTFV, the specific-purpose committee, had decided to
join in the recall efforts and specifically stated:

We
need you to help as well.  Will you be
willing to sign the petition and go the extra mile and circulate it?  If so, please click here to
volunteer and make your commitment. 

 

            On July 14,
2011, EPTFV filed Texas Ethics Commission Form SPAC wherein the committee
changed its address and listed its campaign treasurer as “Ronald F. Webster or
Gilbert T. Gallegos.”  The form included
an address for Ronald Webster but was signed by Gilbert T. Gallegos.  The report did not identify a purpose such as
supporting, opposing, or assisting a candidate, officeholder, or measure, or an
election date, and did not include reports regarding contributions or expenditures.


            On July 18,
2011, Salvador Gomez, Ben Mendoza, and Elizabeth Branham filed notices of
intent to file recall petitions against Mayor Cook, and City Representatives Susie
Byrd and Steve Ortega, respectively.  On or
about July 18, 2011, Brown issued a social media statement encouraging the
public to “[c]all the church to sign the petition.”  Brown did not resign from his position as Chairman
of EPTFV until August 23, 2011.

Temporary Restraining Order

            On September
12, 2011, Cook filed suit seeking a temporary restraining order, injunctive
relief, declaratory judgment, and other relief. 
Stating that efforts to initiate a recall election are not exempt from
Texas campaign finance laws, including those that govern the participation of
for-profit and not-for-profit corporations in such activity, Cook asserted that
that TBM, EPTFV, and the individual Appellees were “liable for their actions as
agents, officers, or directors of corporations that violated the Election Code
in the circulation and submission of recall petitions in this matter.”  Tex.
Elec. Code Ann. §§ 253.091 (West 2010), 253.094 (West Supp. 2011).  Noting the ten-day timeframe within which the
City Clerk is required to examine and certify the recall petitions, Cook timely
sought relief as provided under Section 273.081 of the Election Code and other
relevant provisions prior to the submission of the petitions for certification.  Tex.
R. Civ. P. 680; Tex. Elec. Code
Ann. § 273.081 (West 2010); Tex.
Civ. Prac. & Rem. Code Ann.
§ 65.001 (West 2008).  The trial court
issued a temporary restraining order enjoining any further circulation of
petitions and scheduled a temporary-injunction hearing for September 26, 2011. 

            On September
13, 2011, the following day, Tom Brown, who was not a named defendant in Cook’s motion for a temporary restraining
order and application for temporary injunction, filed a motion along with “all
of the other named defendants,” seeking to dissolve the temporary restraining
order.  On September 14, 2011, in
response to the motion to dissolve, the trial court convened the parties, heard
arguments from counsel but did not receive any evidence in support of the
motion to dissolve the temporary restraining order, entered an order dissolving
a portion of the temporary restraining order prohibiting the circulation of
petitions and then granted affirmative relief rather than maintaining the
status quo.

            During that
proceeding, Cook:  (1) challenged Brown’s
standing to seek dissolution of the restraining order as he was not a named
defendant and no other defendants had filed answers; (2) stated that the
proceedings were not contesting an election; noted that he had requested mediation
or the appointment of a master of Chancery to review evidence regarding the
procurement of the petitions; (3) noted that the Texas Legislature has
singled-out recall elections for special treatment by enacting Section
253.094(b)’s corporate-contribution prohibition and Section 273.081’s
designated relief permitting courts to enjoin illegal acts under the Election
Code; (4) contended that allowing petitions that were circulated and submitted
in violation of Election Code restrictions on corporate involvement in the
process to call an election to recall an officeholder would expressly disregard
the Legislature’s intent in enacting Section 253.094(b) of the Election Code;
and (5) argued that the trial court could not craft an exception to the
Legislature’s creation of a statutory exception permitting injunctive relief
for Election Code violations.  The trial
court noted that Cook may be “absolutely right” that fraud and illegality may
have taken place and asked if the trial court had the power to stop an election
to thwart the rule of the public.

Cook argued that it was proper for the trial
court, under these statutory provisions, to enjoin the illegal acts prohibited
by Section 253.094(b) because he was not seeking to enjoin an election or to
contest election results and the trial court had no discretion but to review
the issues under the statutes as written.

            The trial
court announced:

I
don’t want to deny the Mayor that right. 
But at the same time I don’t want to deny the people of El Paso the
right to recall their elected official. . . . If it is illegal, if you find
illegality, fraud, irregularity, cannot a District Judge under 233 declare this
a void election ab initio, to simply say this is a void election, folks, from
the very beginning . . . [a]nd that’s it. 
And then you go – and then you [go] through a process of having another
election . . . at the cost of you, the citizens of El Paso county.

 

Cook reiterated that allowing an illegal election to proceed
and then declaring it invalid ab initio
could be repeated ad infinitum without
giving meaning to the Legislature’s instruction.  The court replied, “I want to give meaning to
that section [253.094(b)] . . . but more important is the will of the people.”

            The trial
court also noted that its office had received calls from signatories to the
petition asking if their signatures were valid or invalid and Cook’s counsel
noted that “[w]e have received calls . . . about a lot of other issues or
irregularities . . . not in evidence . . [or] . . . before the Court today.”  The trial court again stated that it did “not
want to thwart the will of the people,” would allow recall petitions to be
presented to the City Clerk, and would:

[F]orce
[Cook] at [the] end of this process . . . to file [a] 233 petition and say, Judge,
we’ve got a void election ab initio.  It’s void at the inception.  Period. 


            And then you go to, you know, Court,
District Judge, to – if that District Judge says yes we’ve got a -- a void
election, then you start the process and it’s going to cost the City of El Paso
a lot of money.  

            But that’s what the people want. . .
.   That’s – that’s democracy. . . . [T]he Court
doesn’t want to get in the way of an election. 

 

            Thereafter,
on September 15, 2011, the trial court dissolved several of the provisions
within the temporary restraining order, including restrictions related to the circulation
of recall petitions by TBM, WOL Church, EPTFV, Gomez, Mendoza, and Branham and the
submission of the petitions to the City Clerk until further order of the
Court.  The dissolution order further granted
affirmative relief by ordering the City Clerk to accept all original recall
petitions.

Writ of Mandamus and Certification of
Petitions

            That same
day, Cook filed in this Court a petition for writ of mandamus and a motion for
emergency temporary relief.  On September
22, 2011, one week later, the City Clerk certified that the requisite number of
qualified electors had signed petitions in support of the recall.  This Court dismissed Cook’s mandamus petition
on October 3, 2011, because the temporary restraining order had expired by its
own terms and all issues related thereto had become moot.  In re
John F. Cook, No. 08-11-00274-CV, 2011 WL 4543490 (Tex.App. -- El Paso
October 3, 2011, orig. proceeding).

Temporary Injunction Hearing

            A temporary-injunction
hearing was conducted over five days during October and November 2011.  In the early part of the hearing, the District
Attorney was called as a witness and testified that his office was looking into
possible criminal violations of the Election Code.  As a result, multiple witnesses invoked the
Fifth Amendment during their testimony.

            EPTFV
Treasurer, Ronald Webster, testified that EPTFV was formed in 2010, and he began
serving as the treasurer of EPTFV in July 2011, and had been involved with
EPTFV since 2009, before its actual inception.  Mr. Webster acknowledged that EPTFV had filed with
the City Clerk on July 14, 2011, a specific-purpose committee finance report
form, which included information regarding EPTFV’s change of campaign treasurer
and address but did not identify the committee’s purpose such as supporting,
opposing, or assisting a candidate, officeholder, or measure, an election date,
or reports regarding contributions, expenditures, or loans.  Mr. Webster testified that the form did not
create a new political committee and, as custodian of records, he identified
prior EPTFV specific-purpose committee filings, which stated that the
committee’s purpose was to support a traditional-family-values measure to be
decided by election on November 2, 2010. 
Mr. Webster acknowledged that the Texas Ethics Commission provides
online materials and guidelines regarding the information and forms to be
filed, and stated that he had both viewed the materials and had made an effort
to study them.  EPTFV had filed no forms
since July 2011, and had filed no forms in relation to the recall efforts.  Mr. Webster confirmed that EPTFV was involved
with the effort to recall Cook, Byrd, and Ortega, and that EPTFV had spent more
than $3,000 in support thereof.  Mr.
Webster stated that he was aware that to support or oppose a specific measure
and to spend more than $500, a treasurer must be designated along with a
specific-purpose committee.[4]  He acknowledged that no appointment or
designation of a treasurer for any specific-purpose committee other than EPTFV
for the previous November 2, 2010, traditional-family-values ordinance election
had occurred.  Webster did not bring
records of contributions and expenditures because of his concern that he would incriminate
himself.  There is no evidence in the
record demonstrating that EPTFV had filed any forms with the Texas Election
Commission to “repurpose” the committee or that a new specific-purpose
committee was formed for the purpose of supporting a measure to recall
officeholders Cook, Byrd, or Ortega.

            Both in
amended pleadings filed November 23, 2011, as well as during the
temporary-injunction hearings, Cook contended that in addition to the campaign
finance violations relating to the corporation’s contributions in connection
with the circulation and submission of petitions to call a recall election, Appellees
had expended approximately $4,000 without creating a new specific-purpose
committee or designating a committee treasurer, in violation of Sections
253.003, 253.005, and 253.031 of the Election Code.[5]  Tex.
Elec. Code Ann. §§ 251.001(2),(3),(5), 253.003, 253.005, 253.031,
253.091, 253.095 (West 2010), 253.094(b) (West Supp. 2011).

            On November
28, 2011, without hearing additional argument, the trial court denied Cook’s
request for injunctive relief.  We
judicially notice that on January 30, 2012, the El Paso City Council called the
recall election and scheduled it for April 14, 2012.  A person may appeal from an interlocutory
order of a district court that grants or refuses a temporary injunction.  Tex.
Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (West 2008).

DISCUSSION

Temporary Injunction

            The Election Code entitles a person
who is being harmed or is in danger of being harmed by a violation or
threatened violation of its provisions to obtain the remedy of injunctive
relief to prevent the violation from continuing or occurring.  Tex.
Elec. Code Ann. § 273.081 (West 2010). 
When, as here, an applicant relies upon a statutory source for
injunctive relief, the statute’s express language supersedes the common law
injunctive relief elements such as imminent harm or irreparable injury and lack
of an adequate remedy at law.[6]  Butnaru
v. Ford Motor Co., 84 S.W.3d 198, 210 (Tex. 2002) (recognizing that
requirements for establishing right to common-law injunctive relief differ from
those where injunctive relief is authorized by statute); Marauder Corp. v.
Beall, 301 S.W.3d 817, 820 (Tex.App.--Dallas 2009, no pet.); Avila v. State, 252 S.W.3d 632, 648
(Tex.App.--Tyler 2008, no pet.); David
Jason West and Pydia, Inc. v. State, 212 S.W.3d 513,
519 (Tex.App.--Austin 2006, no pet.).

Standard of Review

            The purpose
of a temporary injunction “is to preserve the status quo of the litigation’s
subject matter pending a trial on the merits.” 
Butnaru, 84 S.W.3d at 204; Pharaoh Oil & Gas, Inc. v. Ranchero
Esperanza, Ltd., 343 S.W.3d 875, 880 (Tex.App.--El Paso 2011, no pet.).  The status quo is the “last, actual,
peaceable, non-contested status that preceded the pending controversy.”  See State
v. Sw. Bell Tel. Co., 526 S.W.2d 526, 528 (Tex. 1975).  The continuation of illegal conduct, however,
cannot be justified as preservation of the status quo.  In re
Newton, 146 S.W.3d 648, 651 (Tex. 2004); Houston Compressed Steel Corp. v. State, 456 S.W.2d 768, 773
(Tex.Civ.App.--Houston [1st Dist.] 1970, no writ) (“In an injunction case
wherein the very acts sought to be enjoined are acts which prima facie
constitute the violation of expressed law, the status quo to be preserved could
never be a condition of affairs where the respondent would be permitted to
continue the acts constituting that violation.”).

            A decision
to grant or deny a temporary injunction rests within the trial court’s sound
discretion.  Butnaru, 84 S.W.3d at 204; Pharaoh
Oil & Gas, Inc., 343 S.W.3d at 880. 
In reviewing the trial court’s order granting or denying injunctive
relief, we do not review the merits of the underlying case.  Davis
v. Huey, 571 S.W.2d 859, 862 (Tex. 1978). 
We reverse the trial court’s order granting or denying injunctive relief
only if an abuse of discretion is shown. 
Butnaru, 84 S.W.3d at 204.

            We do not
substitute our judgment for that of the trial court unless the trial court’s
action was so arbitrary that it exceeded the bounds of reasonable
discretion.  Butnaru, 84 S.W.3d at 204; Johnson
v. Fourth Ct. of Appeals, 700 S.W.2d 916, 918 (Tex. 1985); Davis, 571 S.W.2d at 861-62; Pharaoh Oil & Gas, Inc., 343 S.W.3d
at 881. We view the evidence in the light most favorable to the trial court’s
order, indulging every reasonable inference in its favor, and determine whether
the order is so arbitrary as to exceed the bounds of reasonable
discretion.  Pharaoh Oil & Gas, Inc., 343 S.W.3d at 881.  An abuse of discretion does not exist if the
trial court bases its decisions on conflicting evidence.  Bailey
v. Rodriguez, 351 S.W.3d 424, 426 (Tex.App.--El Paso 2011, no pet.), citing Davis, 571 S.W.2d at 862.

            However, our
review is much less deferential regarding the resolution of legal issues.  Walker
v. Packer, 827 S.W.2d 833, 840 (Tex. 1992); In re Phelps Dodge Magnet Wire Co., 225 S.W.3d 599, 603 (Tex.App.--El
Paso 2005, orig. proceeding); In re
Dillard Department Stores, Inc., 153 S.W.3d 145, 149 (Tex.App.--El Paso
2004, orig. proceeding) (mandamus cases addressing trial court’s alleged abuse
of discretion with respect to resolution of legal issues).  A trial court has no discretion in determining
what the law is or in applying the law to the facts.  Walker,
827 S.W.2d at 840.  Where the facts
definitively indicate that a party is in violation of the law, a trial court no
longer possesses discretion but must enjoin the violation.  San
Miguel v. City of Windcrest, 40 S.W.3d 104, 107 (Tex.App.--San Antonio
2000, no pet.); Priest v. Texas Animal
Health Com’n, 780 S.W.2d 874, 876 (Tex.App.--Dallas 1989, no writ); City of Houston v. Memorial Bend Util. Co.,
331 S.W.2d 418, 422 (Tex.Civ.App.--Houston 1960, writ ref’d n.r.e.).  Consequently,
a court abuses its discretion if there is a clear failure to analyze or apply
the law correctly.  Walker, 827 S.W.2d at 840; In
re Dillard, 153 S.W.3d at 148.

ISSUES

ISSUES ONE AND TWO

            In
Issues One and Two respectively, Cook asks:

(1) Does a Texas trial court have the
discretion to refuse to enforce the Texas Election Code, and enjoin corporate
entities and labor organizations from illegally providing resources and
organizing recall election campaigns, despite the prohibitions of . . . Section
253.094 of the Texas Election Code; and

 

(2) Does a Texas trial court have the
discretion to refuse to enforce Texas election laws prohibiting persons from
making political expenditures in excess of $500 without forming a political
committee, appointing a campaign treasurer, and filing the appointment with the
appropriate authority, as required by Sections 252.001, 253.002, and 253.031 of
the Texas Election Code, and refuse to enjoin such violations?

 

Advisory opinions decide abstract questions of law without
binding the parties.  Brown v. Todd, 53 S.W.3d 297, 302 (Tex.
2001).  Under the separation-of-powers
doctrine, courts are prohibited from issuing advisory opinions, which are a
function of the executive branch of government. 
Texas Ass’n of Bus. v. Texas Air
Control Bd., 852 S.W.2d 440, 444 (Tex. 1993).

            Issues One
and Two ask that we rule on abstract questions of law without application to
the facts of this case, which would bind the parties.  Because we are unable to render advisory
opinions on abstract questions of law without binding the parties, Issues One
and Two are overruled.  Southwestern Elec. Power Co. v. Grant,
73 S.W.3d 211, 223 (Tex. 2002); Brown,
53 S.W.3d at 302.  However, we are not
barred from recognizing and applying relevant law, including the questions of
law raised within Issues One and Two, to resolve the remaining issues properly
before us.

ISSUE THREE

            In Issue
Three, Cook asks us to determine whether the trial court abused its discretion
by refusing to grant his application for a temporary injunction.  If
the evidence shows that an Election Code violation has occurred or is occurring
and that Cook is being harmed or is in danger of being harmed by the violation
or threat of violation of the Election Code provisions, Cook is entitled to
appropriate injunctive relief to prevent the violation from continuing or
occurring.  Tex. Elec. Code Ann. § 273.081 (West 2010).  No evidence of imminent harm, irreparable
injury, or the absence of an adequate remedy at law is necessary to support
Cook’s entitlement to injunctive relief. 
Tex. Elec. Code Ann. §
273.081 (West 2010); Marauder Corp.,
301 S.W.3d at 820; Avila, 252 S.W.3d
at 648; West and Pydia, Inc., 212
S.W.3d at 519.

Texas
Election Code § 253.094(b)

            Cook pleaded and argued two
bases for injunctive relief under Section 273.081.  Cook first alleged violations of Election
Code Section 253.094(b).  Tex. Elec. Code Ann. § 253.094(b) (Contributions
Prohibited) (West Supp. 2011).

            A corporation is restricted from
making a campaign contribution from its own property in connection with a
measure-only election unless the contribution is made to a measure-only
committee.  Tex. Elec. Code Ann. § 253.096 (West 2010).  However, the Election Code also specifies that
a corporation is prohibited from making political contributions in connection
with a recall election, including the circulation and submission of petitions
to call an election.  Tex. Elec. Code Ann. § 253.094(b) (West Supp. 2011).

            A political contribution includes a
campaign contribution, which is defined as a contribution to a candidate or political
committee that is offered or given with the intent that it be used in
connection with a campaign for elective office or on a measure. Tex. Elec. Code Ann. § 251.001(3), (5) (West
2010).  A “contribution” is defined to
include a direct or indirect transfer of money, goods, services, or any other
thing of value. Tex. Elec. Code Ann. §
251.001(2) (West 2010).  Whether a contribution is
made before, during, or after an election does not affect its status as a
campaign contribution.  Tex. Elec. Code Ann. § 251.001(3) (West
2010).  In its Campaign Finance Guide for Political Committees, the Texas Ethics
Commission states that “A contribution of goods or services is an ‘in-kind’
contribution” and lists as examples of such contributions donations of money to
a political committee, and the donation of materials and labor for printing
campaign signs.  A promise to give a
political committee money after an election to pay debts incurred in connection
with an election is a contribution in the form of a pledge.[7]

            A political
committee is defined as a
group of persons that has as a principal purpose accepting political contributions
or making political expenditures and each political committee is required to
appoint a campaign treasurer.  Tex. Elec. Code Ann. §§ 251.001(12),
252.001 (West 2010).  A specific-purpose committee
is a political committee that does not have among its principal purposes those
of a general-purpose committee but does have among its principal purposes:  (A) supporting or opposing one or more
candidates, all of whom are identified and are seeking offices that are known,
or measures,
all of which are identified; (B)
assisting one or more officeholders, all of whom are identified; or (C)
supporting or opposing only one candidate who is unidentified or who is seeking
an office that is unknown.  Tex. Elec. Code Ann. § 251.001(13) (West
2010).  The Election Code defines a
“measure” as a question
or proposal submitted in an election for an expression of the voters’ will and
includes the circulation and submission of a petition to determine whether a
question or proposal is required to be submitted in an election for an
expression of the voters’ will. Tex.
Elec. Code Ann. § 251.001(19) (West 2010).

            To recall
any elected officer of the City of El Paso, a notice of intent to circulate a
recall petition must be filed with the City Clerk and circulated petitions must
be submitted to the City Clerk within sixty days of such notice.  El Paso, Tex., Ordinance 8066 (June 5,
1984).  After examination by the City
Clerk, if the petition is found to be sufficient, the City Clerk is required to
submit the petition to the City Council and, if the officer does not resign,
the City Council is required to order that a recall election be held at the
next election date permitted by law.  El
Paso, Tex., Ordinance 8066 (June 5, 1984). 
Therefore, an election to recall an elected officer of the City of El
Paso, including the circulation and submission of a recall petition,
constitutes a “measure” under the Election Code.  Tex.
Elec. Code Ann. § 251.001(19) (West 2010).

            Cook presented evidence that WOL
Church is a corporation and that the corporation’s website address is “www.tbm.org.”  Cook showed both that Brown is the
President and Chairman of the Board for the WOL Church, a corporation, and that
Brown utilized the corporate website to ask for volunteers to circulate recall
petitions in June 2011.  On July 1, 2011,
the website provided an electronic entry form whereby anyone who desired to
circulate a recall petition could register through the website to do so but now
included two disclaimers stating that the website was owned by Brown and not
WOL Church and a statement that the electronic form was not a petition.  On July 21, 2011, the website added a list of
“[l]ocations of recall petitions,” which included WOL Church and other
corporations, a business, and an individual as well as the respective corporate
addresses and phone numbers.  Evidence
was presented that on August 8, 2011, the website posted a link for the “[r]ecall
of the Mayor and City Representatives,” and that the disclaimer that the
website was owned by Tom Brown was removed.

            Brown
invoked his Fifth Amendment right to remain silent when he was asked, among
other questions, if:  (1) the website was
identified by the name of WOL Church; (2) WOL Church was responsible for the
website and had worked with TBM to publish the information posted on July 21,
2011; (3) WOL Church and TBM are one and the same; (4) through its website and
use of its premises, WOL Church circulated petitions to recall Cook, Byrd, and
Ortega; (5) WOL Church advertised through the website that the public could go
to WOL Church to sign and circulate recall petitions; (6) WOL Church provided
its facilities for the signing and circulation of the recall petitions; (7) WOL
Church participated in “paying for” the recall petitions; (8) in addition to
himself, other officers or directors of WOL Church were circulators of recall
petitions; and (9) WOL Church charges for the use of its facilities.  In civil proceedings, a trial court may draw an
adverse inference against a party who invokes the right to remain silent under the
Fifth Amendment.  Tex. R. Evid. 513(c); Baxter
v. Palmigiano, 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed2d 810 (1976);  Wil-Roye
Inv. Co. II v. Washington Mut. Bank, FA, 142 S.W.3d 393, 405 (Tex.App.--El
Paso 2004, no pet.); Tex. Cap. Securities,
Inc. v. Sandefer, 58 S.W.3d 760, 779 (Tex.App.--Houston [1st Dist.] 2001,
pet. denied).

            The Election
Code does not define goods, services, or “thing of value.”  It is clear that WOL Church, as a
corporation, through the use of its website, promoted the circulation of recall
petitions, created a portal whereby volunteers could register through WOL
Church to circulate petitions, provided the facility and personnel to assist in
the signing and circulation of the recall petitions, and notified the public that
recall petitions were available for signing at WOL Church.  The evidence establishes that WOL Church made
campaign contributions
from its own property in connection with a measure-only recall election without
properly making the contributions to a measure-only committee, Tex. Elec. Code Ann. § 253.096 (West 2010), and that
WOL Church, a corporation, made a political contribution in connection with a
recall election, including the circulation and submission of petitions to call
an election, and failed to make such contribution to a political committee in violation
of Sections 253.096 and 253.094(b) of the Election Code.  Tex.
Elec. Code Ann. §§ 253.096 (West 2010), 253.094(b) (West Supp. 2011).

Citizens
United

            Appellees argue, “Even assuming
[Cook] is factually correct, the circulation and submission of recall petitions
by [corporations] represents core First Amendment activity” and falls within
the protection of the Supreme Court’s ruling in Citizens United.  Citizens United v. Fed. Election Comm’n,
--- U.S. ---, ---, 130 S.Ct. 876, 913, 917, 175 L.Ed.2d 753 (2010).              In Citizens United v. Fed. Election Comm’n, the United States Supreme
Court held that a federal statutory restriction on “corporate independent
expenditures” was unconstitutional. Id.
 The Supreme Court also recognized that
“Disclaimer and disclosure requirements may burden the ability to speak, but
they ‘impose no ceiling on campaign-related activities,’ . . . and ‘do not
prevent anyone from speaking[.]’”  Id. at 914, citing Buckley v. Valeo, 424 U.S. 1, 64, 96 S.Ct. 612, 46 L.Ed.2d
659 (1976) and McConnell v. Fed. Election
Comm’n, 540 U.S. 93, 201, 203-209, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003).

            After Citizens United was decided, the Texas
Legislature amended Section 253.094(b) to omit restrictions upon corporations
making “direct campaign expenditures” under the Texas Election Code.[8]   Tex.
Elec. Code Ann. §
253.094(b) (West Supp. 2011) as amended by Acts 2011, 82nd Leg., R.S., ch.
1009, §§1, 2, 2011 Tex. Sess. Law Serv. (H.B. 2359) (West 2011).

            In Ex parte Ellis, a post-Citizens
United case, the Texas Court of Criminal Appeals determined that Citizens United had no effect upon the
jurisprudence relating to corporate contributions.[9]  In re Ellis,
309 S.W.3d 71, 91 (Tex.Crim.App. 2010). 
In considering vagueness- and overbreadth-challenges to the
constitutionality of Section 253.094 of the Election Code, which we do not
recite or address here, the Court noted that unless authorized by the Election
Code, corporate political contributions are prohibited but recognized that the
Election Code permits a corporation to “make campaign contributions from its
own property in connection with an election on a measure only to a political
committee for supporting or opposing measures exclusively.”  In re
Ellis, 309 S.W.3d at 87.  Rejecting
the constitutional challenges to the Election Code’s corporate-contribution
restrictions in Section 253.094, the Ellis
Court held that a corporation may enjoy several alternate avenues for
political expression with respect to measures:

First and most obviously, a
corporation may contribute to a political committee devoted exclusively to
measures.  Second, a corporation may create its own
political committee, which can then solicit contributions from the
corporation's shareholders, employees, and
their families, and any contributions received may then be contributed without
being subject to corporate limitations. Finally, a corporation may make independent
expenditures (e.g., buy its own issue ads), make press releases, and
otherwise have its agents directly engage in communication with respect to a
measure (or a candidate, for that matter).

 

Tex. Elec. Code Ann. §§ 253.096, 253.100, 253.092
(West 2010); In re Ellis, 309 S.W.3d
at 90-92.  Regarding the concept of issue
advocacy, the Court determined that regardless of whether a measure is slated
for election, creation of a corporate political committee for soliciting
contributions and making independent expenditures, the second and third avenues
recognized in Ellis, afford
sufficient avenues for corporate free expression.  Tex.
Elec. Code Ann. §§
253.092, 253.096 (West 2010); In re Ellis,
309 S.W.3d at 91-92 (internal citations omitted).

Let us be clear.  The Election Code has not and does not
prohibit any and all corporate contributions in connection with recall
elections.  It merely prescribes the
parameters under which contributions may be made.  Appellees were not barred from pursuing the
November 2010 ballot initiative through the special purpose committee known as
EPTFV, nor were they banned from speaking. They spoke and spoke loudly.  They are not banned from speaking now.  They must simply follow the protocol
established in the Election Code with which they are already familiar.  All they needed to do was “re-purpose” EPTFV
or create a new special purpose committee. 
“Why?”, one might ask.  Why are
these procedures necessary?  Citizens United tells us precisely why:

The First Amendment protects
political speech; and disclosure permits citizens and shareholders to react to
the speech of corporate entities in a proper way. This transparency enables the
electorate to make informed decisions and give proper weight to different
speakers and messages.  

 

Citizens United, 130 S.Ct. at 916.

 

While finding that Citizens United was
constitutionally empowered to speak, the Court also required it to disclose the
identities of the parties who spoke.  In
accordance with Citizens United, the
Texas Election Code also requires disclosure.  See Tex. Elec. Code Ann. § 253.094(b) West Supp.
2011).  Violations of Section 253.094(b) were established in the
trial court below.  Tex. Elec. Code Ann. § 253.094(b) (West Supp. 2011).

Texas
Election Code §§ 253.003, 253.005, and 253.031

            Cook next alleged that Sections
253.003, 253.005, and 253.031 of the Election Code have been violated.[10]
 Tex.
Elec. Code Ann. §§
253.003 (Unlawfully Making or Accepting Contribution), 253.005 (Expenditure
from Unlawful Contribution), 253.031(b) (Contribution and Expenditure without
Campaign Treasurer Prohibited) (West 2010).

            A corporation is restricted from
making a campaign contribution from its own property in connection with a
measure-only election unless the contribution is made to a measure-only
committee.  Tex. Elec. Code Ann. § 253.096 (West 2010).  A “measure” means a question or proposal submitted in an election for an
expression of the voters’ will and includes the circulation and submission of a
petition to determine whether a question or proposal is required to be
submitted in an election for an expression of the voters’ will. Tex. Elec. Code Ann. § 251.001(19) (West
2010).

            A person may not knowingly
make a political contribution nor knowingly accept a political contribution the
person knows to have been made in violation of Chapter 253 of the Election
Code.  Tex. Elec. Code Ann. § 253.003 (West 2010). 
A person is also prohibited from knowingly making or authorizing a
political expenditure wholly or partly from a political contribution the person
knows to have been made in violation of Chapter 253.  Tex.
Elec. Code Ann. §
253.005 (West 2010).  A political
committee is barred from knowingly accepting political contributions totaling
more than $500 and may not knowingly make or authorize political expenditures
totaling more than $500 at a time when a campaign treasurer appointment for the
committee is not in effect.  Tex. Elec. Code Ann. § 253.031(b) (West 2010).  An officer, director, or other agent of a
corporation who commits an offense under Chapter 253, Subchapter D of the
Election Code, which regulates corporate contributions and expenditures, is
punishable for the grade of offense applicable to the corporation. Tex. Elec. Code Ann. § 253.094(c) (West Supp. 2011).

            Mr. Webster, the treasurer of
EPTFV, testified during the temporary-injunction hearing that he had viewed and
had attempted to study the Texas Ethics Commission materials regarding
specific-purpose committee requirements, and was aware that to support or
oppose a specific measure and in order to spend more than $500, a treasurer
must be designated for a specific-purpose committee.  Webster testified that no new specific-purpose
committee was formed with respect to the efforts to recall Cook, Byrd, and
Ortega.  He acknowledged that no
appointment or designation of a treasurer of any specific-purpose committee
identified with anything other than EPTFV’s previous November 2, 2010,
traditional-family-values ordinance election had occurred.  According to Webster, EPTFV had proceeded,
after the conclusion of its identified purpose, to expend more than $3,000 to
support the recall efforts of Cook, Byrd, and Ortega.  When asked why he did not bring records of
EPTFV’s contributions and expenditures to the hearing, Webster answered that he
had not brought the records because he believed he could possibly face criminal
liability and invoked his right to remain silent from which it is permissible
to draw an adverse inference.  Tex. R. Evid. 513(c); Baxter, 425 U.S. at 318, 96 S.Ct. at
1558; Wil-Roye Inv. Co. II, 142
S.W.3d at 405; Tex. Cap. Securities, Inc.,
58 S.W.3d at 779.  It is evident that
violations of Section 253.031(b) of the Election Code have occurred.

Harm or Danger of Harm

            Having
determined that provisions of the Election Code have been violated, we next
consider whether Cook is being harmed or is in danger of being harmed by the
violations.  Tex. Elec. Code Ann. § 273.081 (West 2010).  We conclude that he is.

            Uncontroverted is the fact
that Cook was duly elected by eligible voters to the office of Mayor in a
properly-conducted election.  Cook’s
current term of office expires in May 2013 and, due to term limits, he is
ineligible for reelection.  Appellees
essentially contend that the City is required to call an election to recall a
duly-elected officeholder based upon the City Clerk’s certification of
illegally financed, circulated, and submitted petitions and conduct a recall
election at taxpayer expense because Cook, if recalled, may then challenge the
legality of the petitions and may contest the illegally-called election.  We do not agree.  We conclude that when, as here, an
entity desiring to have its voice heard in a recall effort, fails to adhere to
statutes set forth in the State Election Code by illegally procuring petitions
in violation of those statutes, the illegally procured petitions are invalid
from their inception inasmuch as they constitute the fruits of illegal
activity.  The violations are
particularly egregious when the evidence establishes that the entity was aware
of and had adhered to those same statutes in a prior effort to pass a city
ordinance.

            A corporation that has made
political contributions in connection with a recall election in violation of
the Election Code should not be permitted to benefit from its violations simply
because the certification process has occurred. 
While it is true that criminal penalties may be imposed upon the
corporation, such penalties do not address the fact that the corporation’s illegal
conduct under the Election Code acts to disenfranchise those voters who elected
Cook to his office.  Cook timely sought
judicial intervention in an effort to enjoin the City from using the fruits of
WOL Church’s improper corporate contributions, including the circulation of the
petitions, for the purpose of calling the recall election.  But for the trial court’s acquiescence to the
“will of the people,” the improper dissolution of relevant portions of the
temporary restraining order and the denial of injunctive relief, the
certification would not have occurred and the election would not have been
called.  Because the matter was one that
could have been, and should have been, judicially resolved in time for the
proponents to correct deficiencies without delaying the election, injunctive
relief was the proper remedy to prevent violations from continuing or occurring
and not an election contest.  Blum, 997 S.W.2d at 263.

            Moreover, we note that there is no
evidence in the record that certification of petitions acts to do more than
certify that eligible individuals, in requisite number, signed the petitions
within the proper timeframe for doing so. 
A clerk’s certification of the petitions does not address whether, as
here, a corporation has made improper contributions in connection with a recall
election, including the circulation and submission of petitions, in violation
of the Election Code.

            More than $3,000 has admittedly been
expended by EPTFV in the recall effort. 
EPTFV’s purpose was identified as supporting a measure involving “traditional
family values,” and in a November 2010 election, its purpose culminated.  As no proper specific-purpose committee
exists to support a measure to recall Cook and no designated treasurer therefor
exists, we find that Cook is harmed by these Election Code violations.  Tex.
Elec. Code Ann. §§ 252.001, 253.003, 253.031(b) (West 2010).

            Thus, we find that the violations of
the Election Code in this case continue to occur, and as such we are authorized
by Section 273.081 to enjoin the continued violation by appropriate injunctive
relief.  Tex. Elec. Code Ann. § 273.081 (West 2010).

Abuse of Discretion

            Despite
having viewed the evidence in the light most favorable to the trial court’s
order and indulging every reasonable inference in its favor, we find the trial
court’s order denying injunctive relief is so arbitrary as to exceed the bounds
of reasonable discretion.  Pharaoh Oil & Gas, Inc., 343 S.W.3d
at 881.  Because we find that the error
relates back to the time of the improper dissolution of the temporary
restraining order, prior to the presentment and certification of the petitions,
we find that all of the recall petitions submitted to the City Clerk are
illegal and invalid.

            The trial
court was required to apply the law to the facts.  Walker,
827 S.W.2d at 840; In re Dillard, 153
S.W. 3d at 148.  We find the trial court
failed to do so here.  A number of the
trial court’s comments throughout the proceedings below, such as “I don’t want
to thwart . . . the will of the people,” and it “[d]oesn’t matter what I do or
say, one side or the other is going to appeal,”  indicate an abdication of the judicial responsibility
it had to enforce the laws.  A trial
court has no discretion in determining what the law is or in applying the law
to the facts.  Walker, 827 S.W.2d at 840.  As
the trial court repeatedly stated, its reason for dissolving the temporary
restraining order was that it did not wish to thwart the will of the people to
recall its elected officials.  Because the
facts definitively indicate that a party is in violation of the law, the trial
court no longer possessed discretion and was required to enjoin the
violation.  San Miguel, 40 S.W.3d at 107. 
Here, the trial court’s actions hindered the judicial process and
deprived Cook of the relief to which he was entitled.  It is essential to the preservation of the
independence of the judiciary and public confidence in the judicial process
that a judge be faithful to the law and not be swayed by public clamor or fear
of criticism.  Texas Code of Judicial Conduct, Canon 3B(2).  It is significant, we think, that the trial
court lost sight of the fact that a proper application of the law to the facts
in this case does not act to bar qualified voters from properly exercising
their right to seek a recall of elected officeholders, provided that such right
is exercised in accordance with the provisions of the Election Code.

Relief

            Because Cook
is being harmed by the City’s use of petitions illegally-procured because of
violations of the Election Code provisions, Cook is entitled to the appropriate
injunctive relief to prevent the violations from continuing or occurring.  Tex. Elec. Code Ann. § 273.081 (West 2010). 
We disagree with the City Clerk’s assertion that the issues are moot
because the petitions have been certified. 
The illegal acts which mar the validity of the petitions cannot be made
clean through the certification process.  Furthermore, the continuation of the
illegal conduct cannot be justified as preservation of the status quo.  In re
Newton, 146 S.W.3d at 651; Houston
Compressed Steel Corp, 456 S.W.2d at 773.

            Appellees additionally argue
that a court is barred from stopping or delaying an election.  We are guided by the Texas Supreme
Court’s analysis in Blum v. Lanier,
997 S.W.2d 259, 263 (Tex. 1999).  In that
case, Blum was not seeking to enjoin an election but to prevent the City from
using a vague and misleading description of a proposed charter amendment. Blum, 997 S.W.2d at 263.  While agreeing that Blum had no right to delay
an election, which would interfere with the elective process in a manner
contrary to the separation-of-powers doctrine, the Texas Supreme 








Court recognized that while an injunction that delays the
election would be improper, “an injunction that facilitates the elective
process may be appropriate.” Blum,
997 S.W.2d at 263.  Therefore, “if the
matter is one that can be judicially resolved in time to correct deficiencies
in the ballot without delaying the election, then injunctive relief may provide
a remedy that cannot be adequately obtained through an election contest.”  Id.
at 263-64.

            While we
recognize that an injunction to delay an election is not permitted, this is
premised on the assumption that the requisite preliminary acts were performed in
accordance with the provisions of the Election Code.  See Blum,
997 S.W.2d at 263.  That assumption has
been disproven here.

            Issue Three
is sustained.  Because we have sustained
Issue Three, we need not address Issue Four. 
Therefore,
because the trial court’s action was so arbitrary that it exceeded the bounds
of reasonable discretion, we reverse the trial court’s order denying injunctive
relief and render the judgment the trial court should have rendered.  Butnaru,
84 S.W.3d at 204; Johnson, 700 S.W.2d
at 918; Davis, 571 S.W.2d at 861-62; Pharaoh Oil & Gas, Inc., 343 S.W.3d
at 881; Tex. R. App. P. 43.2(c).  The City Clerk is ordered to decertify and
return the recall petitions.  Having
instructed the City Clerk to decertify the petitions, no election thereon may
be called or held.  Tex.
Elec. Code Ann.
§ 273.081 (West 2010).  Appellees’ Motion
to Dismiss Injunctive Claims as Moot filed in this Court on February 7, 2012, is
denied.

                                                                        ANN
CRAWFORD McCLURE, Chief Justice

 

                                                                        GUADALUPE
RIVERA, Justice

 

                                                                        CHRISTOPHER
ANTCLIFF, Justice

 

February 17, 2012

 

Before McClure, C.J., Rivera, J., and Antcliff, J.

 











[1]
Cook seeks relief in his individual capacity only and not in his official
capacity as Mayor of El Paso.





[2]
In a civil case, we accept as true the facts stated in a brief unless another
party contradicts them.  Tex. R. App. P. 38.1(g).  





[3]
On June 30, 2011, the website included a disclaimer, which stated: “This
internet site is owned by Tom Brown and not the church.  Tom Brown in his official capacity as pastor
of Word of Life Church neither encourages or discourages the recall of the
Mayor and Representatives.”





[4]
Each political committee must appoint a campaign treasurer and a political
committee may not knowingly accept political contributions totaling more than
$500 or make or authorize political expenditures totaling more than $500 at a
time when a campaign treasurer appointment for the committee is not in
effect.  Tex. Elec. Code Ann. §§ 252.001, 253.031(b) (West 2010).  A violation of these provisions constitutes
an offense.  Id.  A person who knowingly
makes a political contribution in violation of the Election Code or who
knowingly accepts a political contribution the person knows to have been made
in violation of Chapter 253 of the Code commits an offense.  Tex.
Elec. Code Ann. §§ 252.001, 253.003 (West 2010).  A person who knowingly makes or authorizes a
political expenditure wholly or partly from a political contribution the person
knows to have been made in violation of Chapter 253, other than Section
253.101, commits an offense.  Tex. Elec. Code Ann. § 253.005(West
2010).

 





[5] In his third amended petition, Cook cites to a
non-existent statute, Section 253.051, but from our review of the record it is
apparent from the content of Cook’s pleadings, his arguments before the trial
court, as well as in his briefs and oral argument before this Court, that Cook
intended to cite and rely upon Section 253.031 of the Election Code, which
restricts campaign contributions and expenditures at a time when a campaign
treasurer appointment for a political committee is not in effect.  Tex.
Elec. Code Ann. § 253.031 (West 2010). 
Appellees have contended in this appeal that Cook’s allegations that Sections
252.001, 253.003, 253.005, and 253.031(b) never appeared in Cook’s
pleadings, were never presented to the trial court, and formed no part of the
proceedings below.  While it is true that
Cook’s live pleading below does not specifically cite to Section 252.001 of the
Election Code, which requires the appointment of a campaign treasurer, Cook
alleges that the proponent defendants spent money without creating a new
political committee or designating a treasurer therefor.  Cook cites the other provisions.  No named defendant filed special exceptions
to Cook’s pleadings nor otherwise complained to the trial court about this
issue before the trial court ruled. We liberally construe in favor of the
pleader those pleadings not challenged by special exceptions.  Horizon/CMS
Healthcare Corp. v. Auld, 34 S.W.3d 887, 897 (Tex. 2000).  We look to the pleader’s intent and supply
every fact “that can reasonably be inferred from what is specifically
stated.”  Roark v. Allen, 633 S.W.2d 804, 809 (Tex. 1982).

 





[6]
Under common law, a temporary injunction does not issue as a matter of right
but is an extraordinary remedy.  Butnaru, 84 S.W.3d at 204.  An applicant seeking a temporary injunction
under common law must plead and prove three specific elements: (1) a cause of
action against the defendant; (2) a probable right to the relief sought; and
(3) a probable, imminent, and irreparable injury in the interim.  Id.  If the injured party cannot be adequately
compensated in damages or if the damages cannot be measured by any certain
pecuniary standard, an injury is irreparable. 
Id.  





[7]
Texas Ethics Commission, Campaign Finance
Guide for Political Committees, at 12 (Feb. 16, 2012) available  at http://www.ethics.state.tx.us./guides/PAC_guide.pdf.






[8]
Under
the Texas Election Code, an “expenditure” is a payment of money or any other
thing of value and includes an agreement made or other obligation incurred,
whether legally enforceable or not, to make a payment.  Tex. Elec. Code Ann. § 251.001(6) (West 2010). 
An expenditure made by any person in connection with a campaign for an
elective office or on a measure is a “campaign expenditure.”  Tex. Elec. Code Ann. § 251.001(7) (West 2010). 
A campaign expenditure that does not constitute a campaign contribution
by the person making the expenditure is a “direct campaign expenditure.”  Tex. Elec. Code Ann. § 251.001(8) (West 2010). 
In its Campaign Finance Guide for
Political Committees, the Texas Ethics Commission notes that a
political committee must report any expenditure made from political
contributions, even if the expenditure is not for a campaign or officeholder
purpose, and identifies as examples of political expenditures the
purchasing of stationery for fund-raising letters, the renting of a field to hold
a campaign rally, paying people to put up yard signs in connection with an
election, a political contribution to a candidate or officeholder by a
political committee, and payments to finance a political committee’s general
operating expenses.  Texas Ethics
Commission, Campaign Finance Guide for
Political Committees, at 12-13 (Feb. 16, 2012) available at http://www.ethics.state.tx.us./guides/PAC_guide.pdf.

 





[9]
The defendants in Ellis had been
indicted on charges of unlawful acceptance of corporate political contributions
and money laundering and, in a petition for discretionary review before the
Court of Criminal Appeals, asserted as erroneous the Austin Court of Appeals’
findings that Section 253.094 of the Texas Election Code was neither
unconstitutionally vague nor overbroad.  In re Ellis,
309 S.W.3d at 75, 78 n.39.





[10]
Appellees complain that Cook’s assertions regarding the alleged violations of Sections
252.001, 253.003, 253.005, and 253.031 were not properly before the trial court
and are untimely.  However, our review of
the record reveals that Cook both presented evidence of these violations and
made arguments in support of his request for relief regarding these specific
violations during the temporary-injunction hearing, and pleaded the violations
in his third amended petition filed on November 23, 2011.  The trial court did not enter its order
denying the temporary injunction until November 28, 2011.  Moreover, our review of the record shows that
Appellants never objected to Cook’s arguments when made nor to his pleadings
prior to the trial court’s entry of an order denying relief.